# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **JENSEN KEN ALEXANDER,** | ) |
| Plaintiff, | ) Case No. 7:20CV00766 |
| v. | ) **OPINION AND ORDER** |
| **JOSEPH ELY, ET AL.,** | ) JUDGE JAMES P. JONES |
| Defendants. | ) |

*Jensen Ken Alexander*, Pro Se Plaintiff; *Richard C. Vorhis*, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Defendants.

The plaintiff, Jensen Ken Alexander, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 and the First Amendment to the Constitution. Before the court in this case are Alexander's claims in the Amended Complaint that the defendant prison officials at Wallens Ridge State Prison (Wallens Ridge) denied him physical access to a law library and refused to transfer him to a prison appropriate for his security level. After review of the record, I conclude that the defendants' Motion to Dismiss must be granted.

I. BACKGROUND.

Alexander filed this lawsuit in December 2020. In his Amended Complaint, Alexander raised unrelated claims, which the court severed into two separate civil actions. Op. & Order, ECF No. 12. Claims (1)(a) and (1)(b) remain in this case,

while Alexander's Claim (2) regarding his religious rights was separately filed and has proceeded as No. 7:21CV00312.  Alexander alleges that officials of the Virginia Department of Corrections (VDOC) have scored him as a Level 3 inmate for security purposes.  But for several years, he has been confined at Wallens Ridge, a Level 5 facility, a fact that lies at the heart of the two claims before the court in this case.

In Claim (1)(a), Alexander complains that although he is a Level 3 inmate, he is not allowed physical access to the law library because VDOC policy prohibits such access at Level 5 prisons like Wallens Ridge.  Alexander describes himself as a United States Virgin Islands (USVI) transfer inmate.  He asserts that in November 2021, he had six cases pending in USVI courts and was proceeding without an attorney in four of those cases.  He states that Wallens Ridge has only limited USVI law material available.  He claims that because he has had no access to "up to date cases, laws, and statutes" of the USVI, three of his cases were dismissed.  Resp. Opp'n 5, ECF No. 23.[1]  Documents attached to Alexander's filings indicate that USVI officials periodically provide updated USVI legal materials to Virginia prisons housing USVI prisoners.  *Id.* at Ex. F, at 3, ECF No. 23-1.

---

[1] Alexander's Response in Opposition to the defendants' motion, ECF No. 23, adds many new factual allegations, but he has not moved to amend the operative complaint to include these new facts.  I will, nevertheless, include them in my analysis, because they do not change the outcome on the defendants' Motion to Dismiss.

In response to Alexander's administrative remedies seeking physical access to the law library, officials have simply stated that physical access is not available to inmates at Wallens Ridge. Alexander contends that this access policy violates his right to seek redress under the First Amendment and his rights to equal protection and due process under the Fourteenth Amendment. He sues Unit Manager Joseph Ely, Institutional Ombudsman Brenda Ravizee, and Regional Ombudsman Crowder for failing to resolve these law library problems for him in response to his administrative remedies.

In Claim (1)(b), Alexander challenges the lawfulness of his confinement at a Level 5 prison. He asserts that inmates confined at other, unidentified, Level 3 VDOC prisons enjoy benefits not available to him at Wallens Ridge: access to "better foods from the kitchen and the commissary to maintain a healthier food diet"; "vocational programs"; "longer indoor and outside recreations"; college courses; and physical access to a law library to research cases and laws. Am. Compl. 8, ECF No. 10. He also states that at the USVI prison where he was previously confined, he had more privileges than at Wallens Ridge: "multiple vocational programs," recreation from early morning until late at night, and physical access to a law library. Resp. Opp'n 1, ECF No. 23. He contends that under the agreement between the

USVI and Virginia, a prisoner housed in a VDOC facility should receive the same privileges available to him in the USVI facility. *Id.* at Ex. E, ECF No. 23-1.[2]

Alexander explains that he came to Wallens Ridge when that facility hosted a housing area for inmates who were in violation of the VDOC grooming policy, the so-called hair pod. After the VDOC changed the grooming policy in June 2019 to allow inmates to grow their hair, most of the other USVI inmates who had been housed in the hair pod were transferred to Level 4 facilities. Alexander claims that inmates with past disciplinary offenses have been transferred, while he remained at Wallens Ridge despite having been free of disciplinary offenses for more than two years. He admits that he has refused opportunities to enter the general population there, or has checked himself into restrictive housing, because he believes he should not be forced to share a cell with an inmate classified at a higher security level than he has.

---

[2] In fact, the paragraph of this document that Alexander has highlighted reads as follows:

> e. All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution. The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state.

Resp. Opp'n Ex. E, ECF No. 23-1. In this case, Virginia is the receiving state.

At every Institutional Classification (ICA) hearing in 2019 and 2020, Alexander allegedly demanded to be transferred to a Level 3 prison, based on his Level 3 security classification and disciplinary history, but the transfer has not occurred. He has filed administrative remedies about problem, but the officials responding to his submissions have failed to resolve the issue. He sues the following individuals for failing to reclassify him or otherwise resolve the matter in response to his administrative remedies: Ely, Ravizee, Crowder, Mrs. Church (a counselor), Mr. King (a major), Head Unit Manager Dennis Collins, Mr. Church (a lieutenant), Warden Carl Manis, Assistant Warden David Anderson, and Lieutenant Richard Light.

The defendants have filed a Motion to Dismiss, and Alexander has responded. Therefore, I find the matter ripe for disposition.

## II.  DISCUSSION.

### A. Standard of Review for a Motion to Dismiss.

A district court should dismiss a complaint under Rule 12(b)(6) if, accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences in the plaintiff's favor, the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Id.* at 555.[3] Moreover, a court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013).

### B. First Amendment Access to Courts.

Alexander's Claim (1)(a) is primarily premised on an assertion that the defendants' alleged failure to ensure that he could exercise his right of access to the courts, which harmed his pending cases in the USVI. *Lewis v. Casey*, 518 U.S. 343, 351–53 (1996) (discussing the right generally). As an initial matter, Alexander's claim of entitlement to physical access to a law library has no merit. The right of access does not require prisons to provide inmates "the capability of turning pages in a law library," so long as they have access to legal materials and assistance offering "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Id.* at 356–57.

---

[3] I have omitted internal quotation marks, alterations, and citations here and throughout this Opinion, unless otherwise noted.

To state a constitutional claim of denial of access to the courts, a plaintiff must allege facts showing that the defendants' actions have "hindered his efforts to pursue" a nonfrivolous legal claim or are currently doing so. *Id.* at 351; *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The right of access to the court "is ancillary to the underlying [nonfrivolous and hindered] claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415. Accordingly, the plaintiff must identify in his complaint a "nonfrivolous" and "arguable" legal claim that he has sought, or is currently seeking, to litigate. *Id.* at 415 (quoting *Lewis*, 518 U.S. at 353). If the plaintiff seeks monetary damages for a past violation of the right, he must also demonstrate the potential remedy that the nonfrivolous claim sought to recover, that was lost as a result of the defendant's alleged interference with his right of access. *Id.* Put differently, the claim in the affected lawsuit, "whether anticipated or lost, is an element that must be described in the complaint. *Id.* at 415.

Alexander's allegations in Claim (1)(a) fail on all factors of this legal analysis. First, he does not allege that any of the defendants (Ely, Ravizee, or Crowder), personally, took any action that hindered his ability to exercise his right to access the court. He does not state facts showing that any of these individuals is involved in composing or enforcing VDOC policy about physical access to the law library at Wallens Ridge or in obtaining USVI legal materials for that library.

Second, Alexander does not state any respect in which lack of physical access to the law library at Wallens Ridge has prevented him from researching, filing, or continuing to litigate legal claims related to his convictions or his incarceration. Indeed, he has filed this lawsuit and two others in this court, as well as the six prior cases in the courts of the USVI. He does not demonstrate any particular respect in which the legal resources available (or unavailable) to him at Wallens Ridge have prevented him from bringing or litigating legal claims. Actual injury in this context requires more than nebulous ideas of inferior resources—such as Alexander's belief that he is more efficient conducting legal research by physically going to a law library or that without access to unspecified USVI legal materials, his litigation efforts cannot match those of opposing counsel.

Third, and most importantly, Alexander does not state any nonfrivolous claim that he has sought, or is seeking, to litigate that was adversely affected by the Wallens Ridge library services or through any action by the defendants. Without a statement of a nonfrivolous claim that he has been unable to pursue, he has no basis for a § 1983 action seeking relief for interference with his right to access the courts. *Id.*

## C. Equal Protection.

Liberally construed, both of Alexander's claims assert that he is being treated differently than other USVI inmates. Inmates still confined in USVI facilities

allegedly have privileges that Alexander does not enjoy at Wallens Ridge, and some USVI inmates have been transferred from Wallens Ridge to lower level VDOC facilities. I do not find that Alexander's allegations state any constitutional equal protection claim.

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "does not take from the States all power of classification, but keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). "To state a claim for a violation of the Equal Protection Clause, a plaintiff must plausibly allege first that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Desper v. Clarke*, 1 F.4th 236, 248 (4th Cir. 2021). A prisoner litigant must also demonstrate that the defendants' alleged unequal treatment of similarly situated individuals does not "serve[ ] a legitimate state interest" or is not "rationally related" to any such interest. *Moss v. Clark*, 886 F.2d 686, 690 (4th Cir. 1989). Two groups of persons are similarly situated only if they "are similar in all aspects relevant to attaining the legitimate objectives" of the policy or legislation. *Van der Linde Housing, Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007).

In Claim (1)(a), Alexander asserts that he should have physical library access because inmates in Level 3 prisons do. Clearly, however, as an inmate confined in a Level 5 prison, he is not similarly situated to inmates at Level 3 prisons in all respects relevant to library access. *Desper*, 1 F.4th at 248. Alexander does not allege that he has been treated differently than other inmates housed at Wallens Ridge. Moreover, courts have held that providing inmates with differing privileges at separate detention facilities is not unequal treatment actionable under the Equal Protection Clause. *See, e.g., Strickler v. Waters*, 989 F.2d 1375 (4th Cir. 1993) (finding no equal protection violation where inmate with sentence to serve in state prison facility spent long period in local jail with less favorable conditions, including overcrowding, inadequate exercise facilities, poor climatological conditions, and a less complete library with restricted access). As Alexander fails to allege being treated differently than similarly situated inmates, the equal protection aspect of Claim (1)(a) fails.[4]

---

[4] As the defendants' brief states, Alexander has not clarified how his library access claim involves a deprivation of due process. While I must liberally construe a pro se litigant's pleadings, I cannot construct constitutional claims for him based on a conclusory statement alone. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) ("Principles requiring generous construction of pro se complaints are not . . . without limits," and a reviewing court "cannot be expected to construct full blown claims from sentence fragments"); *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) ("A pro se plaintiff still must allege facts that state a cause of action.").

In Claim (1)(b), Alexander complains that as a Level 3 inmate, he should be transferred to a lower security prison, as other USVI inmates have been. While his response mentions some particular transferred inmates and disciplinary actions involving them, he does not state facts showing that he is similarly situated to any of them in all respects relevant to the sort of transfer he desires. He does not allege that any of them actually scored the same security level that he has, that any of them was transferred to a Level 3 facility as he demands to be, or that any of them have refused to have a cellmate while at Wallens Ridge. Finally, Alexander has not plausibly alleged that the decisions not to transfer him to a lower security prison were motivated by discriminatory animus of any kind. *Desper*, 1 F.4th at 248; *Vicars v. Clarke*, No. 7:20CV00152, 2021 WL 276168, at *3 (W.D. Va. Jan. 27, 2021) (dismissing USVI inmate's equal protection claim under similar circumstances because inmate failed to show purposeful discrimination). I cannot find that Alexander has stated facts supporting any equal protection claim.

### D. High Security Prison Assignment.

In Claim (1)(b), Alexander also faults the defendants for confining him so long at Wallens Ridge, a Level 5 facility, and for failing to transfer him to housing appropriate for his Level 3 security rating. I have construed this claim as alleging deprivation of a liberty interest without due process.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV § 1. Where a claimant asserts procedural due process claims, as Alexander apparently does, the court must first consider whether the inmate has asserted a protectable interest and, if so, whether he was afforded the minimum procedural protections required by the Fourteenth Amendment before he was deprived of that interest. *Incumaa v. Stirling*, 791 F.3d 517, 526 (4th Cir. 2015). "A liberty interest may arise from the Constitution itself, by reasons of guarantees implicit in the word liberty, or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). When a penalty for a disciplinary infraction does not inevitably affect the length of an inmate's term of confinement, his constitutionally protected liberty interests are limited to freedom from restraint that imposes atypical and significant hardship on him in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that temporary disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest). Without a federally protected interest at stake, the inmate has no federal constitutional claim to particular procedural protections. *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015).

"[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221. It is also well established that an inmate has no constitutional right to be housed in a particular prison or type of prison. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (finding no liberty interest in avoiding interstate prison transfer); *Meachum v. Fano*, 427 U.S. 215, 223-224 (1976) (finding that inmates had no liberty interest in avoiding transfer from medium to maximum security prison or in being transferred only after proven, serious misconduct). To warrant federal due process protection, then, Alexander must show that a state policy creates a liberty interest for Level 3 inmates in the particular housing status he desires. I cannot find that he has demonstrated such a state-created liberty interest. At the most, Alexander focuses only on his Level 3 security score. He does not point to any provision in a VDOC policy that creates an expectation for him to be celled or housed only with inmates who have received that same score. In fact, the ICA document he submits indicates evaluators' conclusion that he should remain in restricted housing at Wallens Ridge until he has demonstrated a readiness for transfer to "a full privilege general population" housing area. Resp. Opp'n Ex. E, at 2, ECF No. 23-1. Nothing in the VDOC classification policies available online or on the ICA review sheet Alexander provides suggests that the Level 3 score creates an expectation for him to be housed in a particular unit or prison facility, absent prison staff's discretionary review of

many factors to determine appropriate housing. As Alexander thus fails to establish a protected liberty interest in being transferred to a Level 3 facility, he also has not demonstrated any entitlement to federal due process protections during housing classification proceedings.

### III. CONCLUSION.

For the stated reasons, it is **ORDERED** that the defendants' Motion to Dismiss, ECF No. 18, is GRANTED.

A separate Judgment will enter herewith.

ENTER: October 27, 2022

/s/ JAMES P. JONES
Senior United States District Judge